SO ORDERED.

SIGNED this 25th day of April, 2017.



_____
Robert E. Nugent
United States Bankruptcy Judge

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: | |
| LISTER-PETTER AMERICAS, INCORPORATED | Case No. 15-10502 Chapter 7 |
| Debtor. | |
| IN RE: | |
| LISTER-PETTER U.S. HOLDINGS, INC., | Case No. 15-10504 Chapter 7 |
| Debtor. | (Jointly Administered) |

### ORDER ON GORDIAN TRADING LTD's MOTION FOR STAY RELIEF

1

Cause, including the lack of adequate protection of a creditor's interest in estate property, is a ground for lifting § 362(a)'s automatic stay.[1] Collateral is inadequately protected if its value is permitted to diminish in the hands of the estate. But, in order to grant stay relief, the Court must conclude, first that the creditor has a claim to the collateral, second, that the creditor's interest has not been protected, and third, that the estate lacks a colorable defense to the validity or enforceability of the creditor's claim and that the balance of harm weighs in favor of the estate retaining the affected property while its defenses are litigated.

During his administration of this case, trustee J. Michael Morris sold all of the debtor's assets under this Court's order issued pursuant to § 363(f) and all liens then attaching to those assets have now attached to the funds in the trustee's hands.[2] That fund has diminished over time because the Court has approved certain payments of administrative expenses and because the trustee was required by U.S. Trustee procedures to deposit the fund in a bank that not only pays no interest on it, but charges a monthly percentage service fee to hold the money. Absent other facts in this case, that diminution might suffice to lift the stay here. But there are other, more troubling issues that arise out of the alleged conduct of one of the debtor's former principals, Trevor Modell, and his affiliated entities.

---

[1] 11 U.S.C. § 362(d)(1).

[2] 11 U.S.C. § 363.

2

Mr. Modell, a United Kingdom resident, is a director of and runs the aptly-named Gordian Trading Ltd., the post-petition assignee of a secured claim in this case.[3] Mr. Modell has also been, and, at a relevant time, was simultaneously a director and indirect owner of the debtor, Lister Petter Americas, Inc. (LPAI) and a director and manager of Dorset Road 1, Ltd., LPAI's principal account debtor. The trustee alleges that, before this case was converted to chapter 7, Mr. Modell caused LPAI to ship over $1.5 million worth of goods to Dorset Road 1 in the United Kingdom, that Dorset Road 1 refused to pay for those goods, and that Mr. Modell placed Dorset Road 1 in a UK insolvency or liquidation proceeding. During this same time period, and while LPAI was in bankruptcy here, Modell caused Gordian to acquire the principal secured creditor's loans and security interests attaching to LPAI's assets, effectively placing him, according to the trustee, on all sides of the case. So the trustee has filed an adversary proceeding seeking *inter alia* to recover LPAI's property

---

[3] According to legend, the people of Phrygia made Gordius king and, in gratitude, he made a shrine out of his wagon, tying it with a "fast knot" to a pole—

> This was the celebrated Gordian knot, which, in after times it was said, whoever should untie should become lord of all Asia. Many tried to untie it, but none succeeded, till Alexander the Great, in his career of conquest, came to Phrygia. He tried his skill with as ill success as others, till growing impatient he drew his sword and cut the knot. When he afterwards succeeded in subjecting all Asia to his sway, people began to think that he had complied with the terms of the oracle according to its true meaning.

THOMAS BULLFINCH, *BULLFINCH'S MYTHOLOGY* 48 (Thos. Y. Crowell Co. 1913) (1855).

3

transferred to Dorset Road and Modell and to equitably subordinate Gordian's claim under 11 U.S.C. § 510(c).[4] He has also objected to Gordian's claim.[5]

At the close of the evidentiary hearing on this motion, the Court directed the trustee to invest the sale proceeds in federally-issued securities to stop the payment of service fees.[6] Investing these funds at interest adequately protects them for now. The Court's review and understanding of the web of interests and transactions engaged in by Gordian and Dorset (through Modell) suggests, at a minimum, a plausible case for self-dealing on the part of Modell and others amounting to conduct that would support the equitable subordination of Gordian's claims. And, as discussed below, the activities surrounding Gordian's post-petition acquisition of the debt cast enough doubt on the amount of that debt that Gordian may be on strict proof of the validity of its claim in this case. In these circumstances, releasing these proceeds to Gordian, another United Kingdom entity, would subject the estate to greater harm than Gordian will suffer if the stay remains in place with certain conditions, including that the funds be immediately invested at interest, not at a cost. Gordian's motion for relief from the automatic stay is denied.[7]

---

[4] *See J. Michael Morris, Trustee v. Gordian Trading Limited UK, et al.*, Adv. No. 17-5030 (Bankr. D. Kan.) filed February 24, 2017.

[5] Claim No. 54 and Trustee's objection, Doc. 419.

[6] Doc. 429. The sum of $688,888.58 was received by the Court for deposit. *See* Bankr. D. Kan. Standing Order 16-1.

[7] At the evidentiary hearing the movant Gordian Trading Limited UK appeared by Vincent Filardo, Jr. and Michael DeVincenzo of Mishcon de Reya New York LLP. The chapter 7 trustee J. Michael Morris appeared in person and by attorney Christopher A. McElgunn of Klenda Austerman LLC, Wichita, Kansas and special counsel Maria Sawczuk of Goldstein McClintock, LLLLP, Chicago, Illinois.

4

I.     Facts

        A.     Debtors' cases and background of debtors[8]

Lister-Petter Americas, Inc. (LPAI) filed this case under chapter 11 on March 17, 2015. Trevor Modell provided electronic signatures on both the petition and subsequently filed schedules and statements of financial affairs.[9] On the same day, LPAI's parent company, Lister-Petter U.S. Holdings, Inc. (LPUSH), also filed a chapter 11 case. The Court ordered joint administration of the cases.[10] Both debtors moved for first day orders, including the use of LPAI's principal secured creditor's cash collateral and for an order approving post-petition lending. The principal secured creditor, Embracing Solutions Limited (ESL), filed a detailed response, but ultimately agreed to some limited cash collateral use.[11] The post-petition lender, R.A. Lister Overseas Investment, Inc. (RALOI) agreed to advance the debtor an additional $200,000 as operating capital.[12] RALOI owned LPUSH and, as such, was LPAI's indirect owner. In its cash collateral motion, debtor represented that it owed "not less than" $304,000 "after application of the balance of the value of securities held in

---

[8] For ease of reference in these jointly administered cases, and because nearly all of the activities and transactions relate to the debtor Lister-Petter Americas, Inc., (the operating entity), the Court's reference to "debtor" herein will mean LPAI singularly or both debtors, depending on the context that it is used.

[9] Doc. 67. Modell's title or office of LPAI was not specified, but according to the corporate resolutions, Modell and his son Devon are the directors of both debtors. Ex. B and C.

[10] Doc. 77.

[11] The original credit was extended by Citizens Bank & Trust (CBT) in 2008 and was secured by a lien on all of LPAI's assets. ESL acquired the CBT credit facility by assignment in March of 2015, shortly before debtors filed their chapter 11 cases.

[12] Gordian Trading owned RALOI.

5

account number ending ***017 held with UBS (Monaco) SA in the name of Bakersfield Limited."[13] The debtor filed other first day motions as well, and the Court convened a preliminary hearing on March 20, 2015. At that time, the debtor received interim relief and a final hearing was scheduled for April 9, 2015. The interim order provided for a cash collateral carve-out of $35,000 for all estate and creditor's committee professionals during the interim period before a final order could be entered.[14] The interim order also recognized that ESL's claim was secured by guaranties from several related Lister-Petter entities including Lister-Petter Investment Holdings, Ltd. (LPIH), Lister-Petter FZE (FZE), RALOI, Lister-Petter Green Technologies Limited (LP Green), and Robert D'Aubigny.[15] The relationships among these entities will be discussed below. The interim order also set an objection deadline of April 7, 2015. On April 1, the debtor filed its schedules and statements of affairs, all electronically signed by Mr. Modell.[16] The Court entered an order on April 8, 2015 fixing the claims bar date as July 9, 2015.[17]

On April 7, ESL filed a combined response to the various interim orders, indicating that it was negotiating with the debtor concerning extending and modifying the cash collateral order.[18] At the April 9 hearing, the parties informed the

---

[13] See Doc. 12, p. 3.
[14] Doc. 45, ¶ 19.
[15] *Id.* at ¶ 4.
[16] Doc. 67. Debtor scheduled ESL's claim on Schedule D as disputed and in the amount of $304,000.
[17] Doc. 74.
[18] Doc. 71.

6

Court they would be providing an agreed second interim cash collateral order.[19] On

April 13, the U.S. Trustee announced the appointment of an Unsecured Creditors

Committee (the Committee). The Committee applied to employ counsel and it was

preliminarily approved on April 20. On May 6, the Committee objected to the cash

collateral motion, asserting that granting ESL a sweeping senior lien on all of the

debtor's assets effectively eviscerated any investigation by the Committee of ESL's

liens and conduct, noting that "ESL is a likely target of litigation in these cases, at

the least to determine the extent and amount of its claim, and whether its claim

should be equitably subordinated."[20] The Committee followed up with a motion for a

Rule 2004 examination of ESL and, on May 11, ESL's counsel moved to withdraw,

indicating that "[t]he reason for the withdrawal is that ESL has recently sold its loan

position to Gordian Trading Limited ("Gordian") and no longer has or asserts any

interest in the Debtors or their assets and is no longer a creditor of the bankruptcy

estates."[21]

On May 12, 2015, the Court convened a § 105(d) status conference and a final

hearing on cash collateral and other "first day" matters. At that hearing, the Court

extended the interim cash collateral order again, setting a further final hearing on

May 28, 2015, partly to allow counsel for the assignee, Gordian, to get up to speed in

---

[19] Doc. 79.
[20] Doc. 128, pp. 5-6.
[21] Doc. 131.

7

the case. That ruling was memorialized in an interim order entered on May 21.[22] At the May 28 hearing, all counsel announced that an agreed final order on cash collateral extending its use for 60 days would be submitted, along with a new cash collateral budget and a provision that the Committee would be granted 60 days after Gordian produced all of the loan documents to challenge the claim.[23] No such order was ever filed.

Instead, on June 10, the Committee moved for the appointment of a chapter 11 trustee, alleging that Trevor Modell had now positioned himself on every side of the case and had failed to instruct the debtor or its representatives to act in accordance with their fiduciary duties to the estate.[24] The next day, the U.S. Trustee moved to convert the case to chapter 7 liquidation or dismiss.[25] The debtor responded, stating it intended to promptly liquidate its assets and noting that Philip Briggs, its manager, was being paid by Dorset Road and/or Gordian, not the debtor.[26] The Court set the motions to an evidentiary hearing on June 16 and the debtor filed a separate motion to convert on June 15. Gordian filed a response assenting to the liquidation. After an evidentiary hearing on June 16, the court directed that a chapter 11 trustee be appointed and denied the motions to convert.[27] J. Michael Morris was appointed

---

[22] Doc. 147.
[23] Doc. 151 (Courtroom Minute Sheet for May 28, 2015).
[24] Doc. 161.
[25] Doc. 165.
[26] Doc. 168, ¶ 15.
[27] Doc. 185.

8

chapter 11 trustee on June 26, 2015. Mr. Morris promptly evaluated the likelihood of reorganization and, finding that wanting, set about liquidating the debtor's assets in an effort to stop rent, utility, and other operating expenses.

Pursuant to § 363(f) notices, the trustee sold the debtors' assets free and clear of liens and such liens as Gordian asserts were transferred to the proceeds in the trustee's hands. After seeking allowance of various administrative expenses related to the sales and winding up of operations, the trustee moved to convert the case to chapter 7 on November 5, 2015 and an order converting was entered on December 14. Upon being reappointed a chapter 7 trustee, Mr. Morris sought to retain the Committee's counsel as special counsel to the estate for the purpose of investigating and pursuing claims against Gordian and other parties in connection with their activities before and during the case; that application to employ was granted May 19, 2016.[28] Gordian filed this motion for stay relief for cause on August 19, 2016.[29] After allowing the parties a discovery period, this Court conducted an evidentiary hearing on February 28 and March 1, 2017 at which Messrs. Modell, Morris, and Nazar, formerly debtors' counsel, testified.

    B.    Lister-Petter, Gordian Trading, D'Aubigny, and Modell

Robert D'Aubigny and Trevor Modell sit at the top of a pyramid of similarly-named inter-related entities (several based in offshore debtors' havens), occupying

---

[28] Doc. 364, 375.
[29] Doc. 377.

positions on all sides of this debtor. Their web of relationships understandably excites the interest of the other creditors and their representative, the trustee. The trustee has suggested that Modell has taken advantage of his positions with the debtor and its now principal secured creditor Gordian to strip the debtor's assets for the benefit of his offshore affiliates in the United Kingdom. A chronology of the matters alleged by the trustee is the best way to understand just how intertwined these various parties are.

Gordian Trading was incorporated in Great Britain as a private company on May 9, 2012.[30] James Winder was its manager, director, and sole shareholder. Trevor Modell's son Devon was a director along with Winder from 2013 on. Trevor was appointed a director of Gordian and signed on as a "consultant" in January of 2014.[31] As of 2016 the Modells and Winder remained as Gordian's three directors.[32] As of the date of the petition, Gordian owned 100% of RALOI, which owned 100% of debtor LPUSH, which in turn owns 100% of debtor LPAI. Gordian is therefore the upstream parent of debtors.[33]

Modell has a variety of business interests in the UK and runs a family business called "ELG." ELG, in turn, owns or controls an entity called Springfield which supplied component parts to Lister-Petter entities including Lister-Petter Limited

---

[30] Ex. 1.
[31] Ex. 4.
[32] Ex. 3.
[33] *See* Doc. 67, p. 70 (Statement of Financial Affairs, Question 18).

10

(LPL) and LPAI. Debtor built and shipped small diesel engines, mostly used to power electrical generators. Modell also owns and controls Dorset Road 1, Ltd., Dorset Road 2, Ltd., and Dorset Road 3, Ltd. Dorset 3 owns MilFab Engineering, one of LPAI's unsecured creditors. Dorset 1 is LPAI's largest account debtor owing more than $1.7 million for parts shipped pre- and post-petition.

According to Modell and the debtor, the Lister-Petter entities were initially owned and controlled by Robert D'Aubigny, a resident of Monaco, and aggregated in "St. Catherine's Trust," a Guernsey, Channel Island entity. The Trust owned Lister Petter Group (LPG), parent to Lister Petter Investment Holdings (LPIH) which, in turn, owned Lister Petter Limited (LPL) and R.A. Lister Overseas Investment, Ltd. (RALOI). RALOI, in turn, owns debtors Lister Petter United States Holdings (LPUSH) and Lister Petter Americas, Inc. (LPAI). Sometime before 2014, LPL failed to pay Springfield for shipped inventory and, in December of 2014, Lister Petter Group (LPG) was placed in a United Kingdom insolvency proceeding called "Administration" – a judicial liquidation.

In January of 2015, Modell and Gordian approached the LPG administrator offering to purchase RALOI for £1.7 million, but only paid in about £120,000 of it due to cash flow problems in the American entities. Gordian made no payments to the administrator after July of 2015 because Modell concluded that D'Aubigny had lacked authority to execute the transfer of RALOI from Lister Petter FZE to LPIH. Nevertheless, according to Modell, he needed RALOI so that he could access LPAI's production capacity to service a contract Dorset 1 had won to supply generators in

11

Vietnam. Philip Briggs, who appeared in this case as general manager of LPAI, testified at the cash collateral hearing that he was employed and compensated by Dorset 1 and FZE.[34] Modell and Briggs appear to have caused the debtor to ship parts to Dorset 1, but, after the bankruptcy case was filed, Dorset rejected them as defective and non-conforming.

Modell suggested in testimony that he and D'Aubigny are fierce adversaries,[35] but the record suggests they share common interests. Modell attempted to acquire LPIH's shares in another entity, Lister Petter, Ltd. and is described in that liquidator's report as "a former director" of LPL. Moreover, it appears that Modell had been involved with the debtor LPAI for at least a year before the filing. A history of the loan that Gordian now claims to own and seeks to enforce in this motion makes that clear. According to documents that were attached to Gordian's proof of claim in this case (signed by Modell), beginning in 2008, the debtor had a $5,000,000 commercial revolving line of credit at the Citizens Bank and Trust (CBT) in Gladstone, Missouri. This loan was secured by all of the debtor's (LPAI's) assets and was guaranteed by LPIH. The loan was amended numerous times and its balance increased to $12,000,000 by June of 2013. But, by March of 2014, the parties had executed a forbearance agreement that indicated the debtor had defaulted. On March

---

[34] There is some dispute about who actually paid Briggs. Though the debtor asserted that Dorset Road 1 and Gordian paid him, doc. 168, Briggs testified that his compensation was due from Dorset Road 1 and Lister Petter FZE, a Dubai company owned or controlled by D'Aubigny. See Doc. 204, 47-51.
[35] Modell said D'Aubigny tried to shoot him once.

12

26, the forbearance was modified to extend the maturity of the loan, reduce the available credit to $2,500,000, and to require that Modell supply a guaranty of $950,000 of the debt by April. LP Green Tech was to grant CBT a charge on all of its intellectual property. In September, the forbearance agreement was further amended to require, among other things, that Bakersfield, an entity apparently controlled by D'Aubigny, agree to pay down the loan by liquidating securities it held in Monaco at UBS Monaco. In return for this, CBT agreed to forbear until March 31, 2015. So, at the beginning of 2015, LPAI was in forbearance status with CBT with the expectation that its debt would be reduced by £955,000 or about $1,402,000 when the securities payment cleared. Debtor had a deposit account at CBT of $639,000 and the balance of its debt was $2,600,000.

Modell was a director and in nominal control of the debtor LPAI because Gordian had entered into an agreement in January of 2015 to purchase RALOI's stock and, based upon his willingness to guarantee part of the debtor's debt, Modell had previously been involved in some way with the company. On March 3, 2015, ESL acquired the loan from CBT along with an assignment of the guaranties of FZE, LP Green Tech, RALOI, D'Aubigny, and the securities pledge of Bakersfield. Modell's guaranty is not mentioned. The Loan Sale Agreement provided that the price of the loan was $1,764,946, that CBT would make demand on the guarantors before transferring the loan, and that ESL and Robert D'Aubigny would release CBT from any claims concerning the transaction. To pay for the assignment, ESL would give CBT a promissory note for the purchase price of the loan secured by a lien on all of

13

the assigned loan documents in ESL's hands. When CBT received the proceeds of the UBS stock securities account and the balance of the amount due under the assignment, it would release its lien. Bakersfield liquidated the securities account and transferred the proceeds on February 27, 2015 to CBT. According to Modell, after this occurred, he ran into Anthony Jaffe, one of D'Aubigny's associates and a principal of ESL, on a plane. Jaffe told him about the CBT-ESL transaction, but noted that D'Aubigny had not caused Bakersfield to pay off the assignment obligation. Modell then proposed that Gordian acquire the CBT loan from ESL. Notably, by this time, Modell was a director of the debtor LPAI. By the time the case was filed on March 17, Gordian was the indirect owner of LPAI through its acquisition of RALOI. Just ten days after the case was filed here, Gordian executed a sale agreement with ESL to purchase the CBT note for $450,000, the sale to be closed April 24. That amount was to be paid by Gordian to Mishcon de Reya, its attorneys in this case, with most of the money being transferred to CBT to pay off ESL's remaining obligation to CBT under the March agreement, thus releasing D'Aubigny's guaranty and any obligations Jaffe might have. So, by April 24, Gordian, run by Modell, owned the principal secured claim against the debtor LPAI and owned the debtor's owner, RALOI.

Modell as director of Gordian, signed Gordian's proof of claim in LPAI's bankruptcy.[36] According to debtors' March 17, 2015 corporate resolutions authorizing the filing of these bankruptcy cases, Modell was also a director of LPAI and LPUSH

---

[36] *See* Claim No. 54-1 in the amount of $2,048,022 filed July 9, 2015.

and signed the voluntary petitions and schedules. He was thus a director of both LPAI and Gordian at all relevant times until he resigned as director of debtors, after Gordian had acquired the CBT loan from ESL. In the schedules that Modell signed he listed the ESL claim that Gordian acquired in the amount of $304,000 and as "disputed;" in Gordian's proof of claim he listed the claim in the amount of $2,048,022.

Modell also owned Dorset 1 which owes the debtor over $1,700,000, representing the single largest account receivable. Modell also controls all of LP Green Tech's intellectual property because one of the loan documents assigned to Gordian is the charge on that property.

The Modells resigned as directors of the debtors in June of 2015, around the time of the motions for appointment of a chapter 11 trustee and to convert or dismiss the case. Modell placed Dorset Road 1 in an administration proceeding in the UK on November 26, 2015, thwarting any effort on the part of the estate to collect the account receivable.

C.    The trustee's adversary complaint[37] and claim objection[38]

The trustee sued Modell, his son Devon Modell, and Gordian on February 24, 2017 alleging that Gordian's claim should be equitably subordinated because he says Modell's actions concerning Dorset Road's account payable and Gordian's acquisition of the CBT loan breached Modell's fiduciary duties to the bankruptcy estate and the

---

[37] Doc. 1, *Morris v. Gordian Trading Limited UK, et al. (In re Lister-Petter Americas Inc.),* Adv. No. 17-5030; Case No. 15-10502 (Bankr. D. Kan.).
[38] Claim No. 54 and Trustee's objection, Doc. 419.

other creditors.[39] He also claims that Gordian and the Modells are liable for the conduct of D'Aubigny and Jaffe during the time that ESL held the loan, supplying a further basis for subordination. The trustee further claims that Gordian and the Modells caused the debtor to ship product to Dorset Road 1 and retained control of the property through their control of Dorset Road 1 during the pendency of the case, making them liable for turnover under § 542. The trustee has objected to Gordian's claim in this case, asserting that Modell's signing of debtor's bankruptcy schedules that listed the ESL claim at $304,000 amounts to a judicial estoppel of his now claiming more than $2 million for Gordian. Moreover, he asserts that the debtor should get credit for the value of the intellectual property that is subject to the CBT charge. Finally, the trustee claims the right to surcharge the proceeds of the sale to pay administrative expenses accrued and to be accrued in the case.

D.    Condition of the collateral proceeds fund

When the trustee liquidated LPAI's remaining assets, he deposited them in a trustee account at the Bank of Kansas City. From that account, he paid final sale expenses that included facilities rent, auctioneer's fees, and wages for former employees involved in organizing the sale. Pursuant to the Executive Office of the U.S. Trustee (EOUST) guidelines, chapter 7 trustee accounts can be deposited with only certain approved financial institutions that do not pay interest. Indeed, these

---

[39] On March 17, 2017 Morris amended his complaint adding a fraudulent transfer avoidance claim based upon a $7.5 million increase in LPAI's loan with CBT on June 20, 2013. Adv. Doc. 4.

16

institutions charge a monthly service fee that is based upon a percentage of the assets on deposit. As an incentive for the trustees to use these institutions, the approved banks supply trustees with accounting software. As a result, the amount on deposit has been reduced by court-ordered payments to LPAI's landlords and other direct expenses of sale. In addition, until the funds were transferred to the Court's account, the bank assessed an average monthly service fee of $1,000. This diminution and the likelihood of further administrative expenses being surcharged against Gordian form the basis for Gordian's allegation that its interest in the funds lacks adequate protection.

II.   Analysis

Gordian, as the successor to ESL and the CBT secured loan to LPAI, contends the automatic stay should be lifted for cause under 11 U.S.C. § 362(d)(1) because its interest in the sale proceeds from the liquidation of LPAI's assets held by the trustee is not adequately protected where those funds are diminishing.

A.   Stay Relief Standards and Adequate Protection

"Cause" for relief from the stay is not specifically defined by the Bankruptcy Code, but it includes the lack of adequate protection of the creditor's interest in the collateral or proceeds of the collateral that secure the debt.[40] In prosecuting its stay relief motion, Gordian has the burden of proof on the debtor's equity in the property,

---

[40] 11 U.S.C. § 362(d)(1) ("cause" includes the lack of adequate protection).

Case 15-10502    Doc# 436    Filed 04/26/17    Page 17 of 26

but the trustee has the burden of proof on all other issues.[41] The trustee therefore has the burden of proving that Gordian is adequately protected in the proceeds from the sale of debtor's assets that he holds. Here, Gordian contends that it is not adequately protected because the amount of sale proceeds continues to decline due to payment of certain administrative expenses, including the bank's monthly service fees where the funds are on deposit. The trustee counters that the funds on deposit are safe and secure and cannot be disbursed without a court order.

a. Remedying adequate protection issues

Adequate protection is a question of fact to be decided on a case-by-case basis under the totality of the circumstances.[42] The linchpin of adequate protection is value and the court must preserve the value of the collateral.[43] In addition to Gordian's alleged lien in the proceeds from the sale of LPAI's assets that secured the loan, this Court's recent directive that the trustee deposit the funds in an interest bearing account through the Court Registry Investment System (CRIS) administered by the Administrative Office of the United States Courts affords Gordian additional protection from future bank service fees and charges that would otherwise diminish

---

[41] § 362(g).

[42] Adequate protection is a question of fact and is to be decided flexibly on a case by case basis. *MBank Dallas, N.A. v. O'Connor (In re O'Connor),* 808 F.2d 1393, 1396-97 (10th Cir. 1987). *See also Pursifull v. Eakin,* 814 F.2d 1501, 1506 (10th Cir. 1987) (Because "cause" is not defined, relief from the stay is discretionary and must be determined on a case-by-case basis.); *In re JE Livestock, Inc.,* 375 B.R. 892, 897 (10th Cir. BAP 2007) (citing *Pursifull, supra).*

[43] *In re O'Connor,* 808 F.2d 1393, 1398.

18

the amount of funds on deposit and held by the trustee.[44] As reported by the trustee, the § 363(f) sales of LPAI's assets in September and October of 2015 grossed $787,629 and in addition, the trustee collected some accounts receivable.[45] Little transaction activity occurred in the trustee's account during 2016 except for the bank service fee charges.[46] Gordian filed its motion for stay relief on August 19, 2016 and the evidentiary hearing was held some six months later, but Gordian never sought to expedite the hearing to stop the siphoning of bank service fees – a situation over which the trustee had no control. Had Gordian done so, the Court likely would have issued its directive to transfer the funds to CRIS much earlier. The transfer of the funds to an interest-bearing facility provides adequate protection of Gordian's interest in the deposited funds.

In *In re Utah Aircraft Alliance,* the Tenth Circuit Bankruptcy Appellate Panel considered a seller's motion for relief from the stay for lack of adequate protection dealing with seller's retained interest in five aircraft it sold under a prepetition sales agreement with debtor.[47] The trustee argued that seller's security interest was unperfected because it had not recorded its security interest with the Federal Aviation Administration and had a colorable defense to the seller's claim that it had

---

[44] *See* S.O. 16-1, effective October 12, 2016.
[45] Doc. 292.
[46] *See* Doc. 403, Trustee's Interim Report for period ending December 31, 2016 showing $690,841 as the balance of funds on hand, and showing monthly bank service fees disbursed.
[47] 342 B.R. 327 (10th Cir. BAP May 19, 2006).

19

a repairman's lien under state law because the seller did not continuously possess the aircraft as necessary to assert the lien. Because the trustee raised colorable defenses to dispute the seller's claim of ownership and security interest, stay relief was denied.

> At a stay hearing, the court merely determines whether the movant has a colorable claim, i.e., a facially valid security interest. It then should consider whether the objector has raised a colorable defense that, not merely offsets the movant's claim, but actually would defeat the movant's claim. In this context, the bankruptcy court limits its consideration of defenses to those that strike at the heart of the creditor's lien or that bear on the debtor's equity in the property.[48]

Here, the trustee has made a colorable claim that the amount and extent of Gordian's claim to the sale proceeds is substantially overstated or that its claim should be equitably subordinated due to the circumstances surrounding Gordian's acquiring the claim. If that claim acquired from ESL is valid and in the amount of $304,000 as debtor (Modell) represented under penalty of perjury in its bankruptcy papers, rather than the $2.048 million that Gordian now asserts in its proof of claim (also signed by Modell), Gordian is adequately protected in the sale proceeds because the funds on deposit are more than double the amount of the claim as scheduled by debtor and the estate is earning interest on those funds deposited with the court registry.[49] And if Gordian's claim is equitably subordinated as the trustee alleges it should, it may have no interest in the sale proceeds.

---

[48] *Id.* at 332.
[49] Debtor also represented in its motion to use cash collateral that its obligation under the CBT/ESL credit facility was $304,000 on the date of the petition. *See* Doc. 12, ¶ 6.

20

Finally, the credit acquired by Gordian from ESL/CBT was further collateralized by a charge on intellectual property of debtor's affiliate LP Green Tech.[50] Modell controls all of LP Green Tech's intellectual property because one of the loan documents assigned to Gordian is the charge on that property. That intellectual property has not been accounted for nor has its value been determined. Until the intellectual property is determined to have no value, that property provides additional adequate protection. That will be sorted out in the claim objection process, and is further reason to maintain the status quo with respect to the deposited funds.

## B. Trustees' Defenses

Apart from adequate protection, courts consider a number of factors in determining whether cause exists under the totality of the circumstances for lifting the stay, including injury to the movant if the stay is not modified and the good or bad faith of the debtor.[51] The totality of the circumstances encompasses "how the parties have conducted themselves, their good or bad faith, and their motives."[52] Gordian has the initial burden to show that cause exists to lift the stay, after which

---

[50] *See* Ex. 5, G005.162-G005.183 (Charge over Intellectual Property dated September 30, 2014). The Charge and LP Green Tech's guarantee of the LPAI debt were required as a condition of the forbearance agreement between CBT and LPAI. The assignment of the CBT loan and loan documents to ESL specifically conveyed the Charge. *See* Ex. 7 at G007.005 (#18).

[51] *In re JE Livestock, Inc.,* 375 B.R. 892, 897 (10th Cir. BAP 2007).

[52] *Id.* (Debtor's refusal to propose a plan that utilized court's valuation of collateral made under § 506(a) at debtor's request for treatment of creditor's claim constituted lack of good faith in prosecuting chapter 11 case.)

21

the ultimate burden shifts to the trustee to demonstrate why it should remain in place.[53]

    a.  Balance of harms

Other than delay in realizing on its cash collateral, it is difficult to conclude that Gordian suffers any harm by keeping the stay in place. With the transfer and deposit of the sale proceeds to an interest-bearing account, Gordian's interest in the sale proceeds is protected from diminution in value while the funds remain on deposit and while the parties litigate the extent of Gordian's claim and the claims asserted by the trustee against Modell and Gordian in the adversary proceeding. Lifting the stay and allowing the sale proceeds to be turned over to Gordian and Modell would be letting the horse out of the barn. The amount of Gordian's claim is in serious question, given the conflicting amounts that have been asserted by Modell while acting for LPAI and while acting for Gordian. Gordian's filed claim may be subject to an estoppel defense. Given the difficulty in exercising jurisdiction over foreign entities and non-resident individuals, and the complex maze of interrelated companies with Modell seemingly involved in all of them in some capacity, the trustee would likely find it difficult to recover the funds if released to Gordian and Modell. Once they have the money, Gordian and Modell would lose any incentive to prosecute their claim, defend the trustee's claims, and to cooperate in the administration of this case. If the Trustee prevailed, the onus to recover these funds would be on him. The

---

[53] *In re Busch,* 294 B.R. 137, 140-41 (10th Cir. BAP 2003).

balance of harms weighs in favor of the trustee, requiring the continuation of the stay while the Court adjudicates the claims between the parties.

### b. Modell's (and Gordian's) motives and self-dealing

This factor weighs heavily on the "cause" inquiry under the circumstances of this case. As noted by the trustee, Modell was on "all sides" of this case. Gordian (Modell) acquired RALOI shortly before this case was filed and thereby gained control over the debtors. As a director of both debtors he authorized the commencement of this chapter 11 case on March 17, 2015, signing the petition and later signing the schedules filed April 1, 2015.

Modell's companies, Dorset Road and Milfab, were listed among LPAI's largest account debtors.[54] The Dorset Road account debt swelled by $1,520,457 prior to conversion of the case when Modell caused LPAI to ship goods to Dorset Road and Dorset Road refused to pay for them. Modell then placed Dorset Road in a United Kingdom insolvency proceeding or "administration."

Modell was a director of Gordian, debtors' upstream parent and an insider, when a few days after debtors filed this case it acquired the loan of LPAI's principal secured creditor ESL for $450,000. As director of debtors, Modell stated that the amount of ESL's claim was $304,000 and that the claim was disputed. As director of Gordian, Modell represented that its claim was $2.048 million. So by the end of

---

[54] On Schedule F filed April 1, 2015, LPAI listed the claim of Dorset Road in the amount of $390,000 and listed the claim of Milfab at $240,000. *See* Doc. 67.

April of 2015, Gordian (Modell) indirectly owned debtors LPAI and LPUSH and was the principal secured creditor of debtors. And Modell, through Dorset Road was LPAI's principal customer and business source and largest account debtor.

Shortly after Gordian's purchase of the ESL debt closed, Modell requested debtors' counsel to convert LPAI's case to chapter 7, "so that Gordian Trading could foreclose its security interest," and "to eliminate the standing of the Creditors' Committee to raise issues."[55] Modell also suggested that Dorset Road, LPAI's major customer, might cease business activity with LPAI, thus creating a cash flow problem for debtor.[56] Debtor's then counsel, Edward Nazar, cautioned Modell that a conversion to chapter 7 may call into question management's good faith and whether there was an ulterior motive, such as obtaining control and title to debtor's assets free of claims of unsecured creditors. This could result in suits to subordinate Gordian's claim. If management of debtor were questioned, it could also result in the appointment of a chapter 11 trustee.[57]

As it turned out, the concerns and assessment of the situation expressed by Mr. Nazar in his letter of April 30, 2015 came to fruition. The Committee sought and obtained the appointment J. Michael Morris as chapter 11 trustee on June 24, 2015, citing Modell's breach of fiduciary duties to the estate. The chapter 11 trustee proceeded with inventorying and selling the debtors' assets. On June 25, 2015,

---

[55] *See* Ex. S.
[56] *Id.*
[57] *Id.*

Modell resigned as a director of debtors, leaving no management of debtors in place. After completion of the sales of debtors' assets, the case was converted to chapter 7 on December 14, 2015 with Mr. Morris appointed as the chapter 7 trustee. As predicted by Mr. Nazar, the trustee's suit against Modell and Gordian followed and includes claims to equitable subordinate Gordian's claim, for turnover of the $1.5 million worth of property shipped post-petition to Dorset Road (controlled by Modell) and never paid for, and to judicially estop Gordian from asserting a claim in excess of $304,000. The trustee has also objected to Gordian's claim.

This recitation of Modell's and Gordian's conduct, self-dealing, and motivation, clearly evidenced by Mr. Nazar's April 30 letter, alone is sufficient to warrant the continuation of the stay until the trustee's claim objection and his causes of action asserted in the adversary complaint are finally adjudicated by this Court.[58]

III.    Conclusion

Where, as here, Gordian's claim is disputed and the trustee is directly attacking that secured claim,[59] the Court must first adjudicate the merits of the trustee's affirmative claims for relief before determining whether to grant relief from the stay.[60] Because the trustee's adversary complaint was only recently filed, the

---

[58] *See* Ex. S.

[59] The trustee's claims for equitable subordination under § 510(c) and avoidance of fraudulent transfer under § 548(a)(1)(B) in particular strike at the heart of Gordian's secured claim. *See* Adv. No. 17-5030, Doc. 4, Counts I, II, and V.

[60] *See In re Franklin Equipment Co.,* 416 B.R. 483, 506-07 (Bankr. E.D. Va. 2009) (chapter 7 trustee's assertion that insiders' secured claim should be recharacterized from debt to equity was a defense that went directly to the heart of the insiders' claims;

Case 15-10502    Doc# 436    Filed 04/26/17    Page 25 of 26

Court will allow a reasonable time for discovery by the parties before conducting a trial of those claims.  In the meantime, Gordian's interest in the liquidation proceeds of LPAI is adequately protected by their deposit in an interest-bearing account to preserve their value, subject to my further order. Accordingly, Gordian's motion for relief from the stay is DENIED at this time.

# # #

---

recharacterization of debt achieves essentially the same result as equitable subordination); *In re Poughkeepsie Hotel Assocs. Joint Venture,* 132 B.R. 287, 292 (Bankr. S.D. N.Y. 1991) (equitable subordination defense went to the heart of creditor's claim and should be adjudicated in deciding whether to grant relief from the stay); *In re Davenport,* 34 B.R. 463, 466 (Bankr. M.D. Fla. 1983) (stay relief denied until fraudulent transfer claims are adjudicated because the validity of creditor's lien was at issue).

26