**SO ORDERED.**

**SIGNED this 6th day of February, 2020.**



_____
Robert E. Nugent
United States Bankruptcy Judge

_____

**DESIGNATED FOR ONLINE PUBLICATION**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE: | |
| **LISTER-PETTER AMERICAS, INC.** | **Case No. 15-10502** |
| Debtor. | **Chapter 7** |

## ORDER APPROVING TRUSTEE'S FINAL REPORT (Doc. 506)

When a chapter 7 estate is "fully administered," the Court can close the case.[1] If no one objects to the trustee's final report within 30 days of its filing, the case is presumed to be fully administered.[2] But a case may not be fully administered if there are outstanding undetermined administrative claims. For a claim to receive administrative priority, the claimant must have conferred a benefit upon the

_____

[1] 11 U.S.C. § 350(a). All statutory references are to Title 11, U.S.C., as amended, unless otherwise noted. Unless otherwise indicated, all "Doc." references are to the docket report in this case, No. 15-10502.
[2] Fed. R. Bankr. P. 5009(a).

1

estate.[3] In this case, the trustee's final report shows that all of the debtor's assets have been liquidated or otherwise administered, the estate is insolvent, and only the holders of administrative and priority claims will receive any distribution.[4] Citizens Bank and Trust Company (CBT or Bank) objects to the trustee's final report, asserting that the estate should remain open and that no administrative expenses should be paid until its alleged administrative allowance is determined.[5] CBT says that claim is comprised of attorneys' fees and expenses it will incur while defending purported causes of action against the Bank that the trustee assigned to Gordian Trading Limited UK. Gordian has now filed that action in state court in Missouri and the Bank has removed it to the U.S. Bankruptcy Court for the Western District of Missouri (the Missouri case).[6] But because the Bank's actions render no benefit to the estate, its alleged indemnification rights arise from a prepetition contract that the Bank no longer owns, and its claims do not fall within the so-called *Reading*[7] exception to the benefit requirement, the Bank has no allowable administrative claim. The Bank's objection is therefore overruled, and the trustee's final report is approved, the estate having been fully administered.[8]

Background

---

[3] § 503(b).
[4] Doc. 506, pp. 29-31.
[5] Doc. 510.
[6] *See Lister-Petter Americas, Inc. and Gordian Trading Limited UK v. Citizens Bank & Trust Co.,* Adv. No. 19-4090-can (Bankr. W.D. Mo. filed Dec. 23, 2019), where a motion to remand is pending, Docs. 1-1, 5.
[7] *Reading Co. v. Brown,* 391 U.S. 471 (1968).
[8] The Chapter 7 trustee J. Michael Morris appears in support of his final report. Citizens Bank & Trust Company appears by its attorney Michelle Masoner.

2

LPAI and its holding company, Lister-Petter US Holding, Inc. (LPUSH), filed short-lived companion chapter 11 cases in 2015.[9] I have entered several detailed orders that outline the tangled web of relationships among LPAI, LPUSH, Gordian, and the individuals behind these entities—British nationals Trevor and Devon Modell.[10] Suffice it to say here that the Modells claim an ownership interest in the debtors as well as Gordian. Beginning in 2008, CBT was LPAI's principal secured lender, taking security interests in all of its and LPUSH's property to secure repayment of obligations that eventually exceeded $2.0 million. Shortly *before* this case was filed in March of 2015, CBT sold its loans to Embracing Solutions Ltd. for what it was owed. After filing, but before this case was converted to chapter 7, Embracing sold the loans to Gordian, effectively rendering Gordian and the Modells not only the owners of the debtors, but also their secured lender.

The trustee liquidated most of LPAI's physical and account assets and sued for turnover of assets from Gordian and the Modells, for the Modells' breach of fiduciary duty, and to subordinate Gordian's claim.[11] After discovery closed, Gordian moved for summary judgment; it was granted in part and denied in part.[12] After that, the Modells, Gordian, and the trustee mediated their remaining disputes

---

[9] *See In re Lister-Petter US Holding, Inc.,* Case No. 15-10504 (Bankr. D. Kan.). These two cases were jointly administered.
[10] *See* Doc. 435, Order on Gordian's Motion for Relief from Stay, entered Apr. 26, 2017. *See also Morris, Chapter 7 Trustee v. Gordian Trading Limited UK, et al.,* Adv. No. 17-5030 (Bankr. D. Kan), Doc. 88, Order on Gordian's Motion for Summary Judgment, entered Sept. 24, 2018.
[11] Adv. No. 17-5030, Doc. 1.
[12] Adv. No. 17-5030, Doc. 88.

3

before Judge Robert D. Berger and reached a compromise by which Gordian received approximately half of the LPAI sale proceeds, $350,000, and the balance was retained by the trustee for distribution.[13] The convoluted relations among the debtors, Gordian, the Modells, and numerous other off-shore entities they owned or controlled contributed to the estate accruing extensive professional fees and expenses in the case. Those include attorney fees and expenses payable to counsel to the debtors in possession, the official unsecured creditors' committee, and the trustee. The chapter 7 administrative expenses alone amounted to $370,917.10 of which the trustee proposes to pay a total of $305,621.43, leaving less than $27,500 for chapter 11 administrative expenses (which exceed $250,000) and priority tax and wage claims.[14] He proposes to pay the tax and wage claims in full, leaving about $17,000 to be distributed to the chapter 11 administrative expense claimants.[15] The unsecured creditors, who claim approximately $4 million in the aggregate, will receive nothing.[16]

As part of the settlement and compromise with the Gordian entities, the trustee agreed to assign LPAI's purported causes of action against the Bank to Gordian. Those purported claims include breach of contract, breach of fiduciary duty, fraud, and unjust enrichment, based on the Bank's alleged "wrongful misappropriat[ion]" of the proceeds of certain securities sold before the bankruptcy

---

[13] Doc. 471, Order Approving Settlement entered Feb. 19, 2019.
[14] Doc. 506, p. 29.
[15] *Id.* at p. 30.
[16] *Id.* at pp. 31-34.

4

cases were filed.[17] No one (including the Bank) objected to the assignment, which the Court approved as part of the settlement.[18] More recently, the trustee assigned the LPUSH estate's interest in LPAI's equity to Gordian.[19] On November 8, 2019 Gordian filed an action in Missouri state court to prosecute these causes of action against the Bank.[20] The Bank now objects to the trustee's final report because it believes it has (or will have) an administrative claim for the costs of defending itself. The Bank has had no prior involvement in the administration of this case.[21]

Analysis

All we consider today is whether to approve the trustee's final report. That requires me to determine whether further administration in the case remains. The law and procedure concerning final reports and case closing is fairly simple. When a chapter 7 estate is "fully administered," the trustee submits a final report as § 704(a)(9) requires. Rule 5009(a) provides that if no one objects to the final report within 30 days of filing, the case is presumed to be fully administered.[22] In this case, because the Bank objected, that presumption doesn't attach. Instead, I must

---

[17] See Doc. 511, ¶ 40. See also Adv. No. 19-4090 (Bankr. W.D. Mo.), Doc. 1-1, Ex. A, pp. 11-12 (removed Missouri case state court petition).
[18] Doc. 471.
[19] Case No. 15-10504, Doc. 153.
[20] Adv. No. 19-4090 (Bankr. W.D. Mo.), Doc. 1-1, Ex. A (Missouri case petition).
[21] Concurrent with its objection to the final report, the Bank also filed a declaratory judgment action here to determine the value and extent of the assigned causes of action and seeking indemnification by the estate of its defense costs. See *Citizens Bank & Trust Company v. Lister-Petter Americas Inc., et al.*, Adv. No. 19-5129 (Bankr. D. Kan.), Doc. 1 filed Dec. 23, 2019. The issues in the declaratory action essentially duplicate those pending in the Missouri case and may be more economically decided in that forum.
[22] Fed. R. Bankr. P. 5009(a).

5

decide if the case has been fully administered. "Fully administered" is not a defined term in the bankruptcy code or rules. Collier's treatise states that, in a chapter 7 case, "full administration" requires that the trustee file a final report and the distribution be completed.[23] Other open issues do not preclude the case closing unless resolving them somehow prevents the trustee being discharged or the estate being fully administered. The Bank argues that LPAI's estate cannot be fully administered until the Bank's administrative claim is allowed and provided for, but as next discussed, that assertion lacks a legal basis.

No one disputes that all of the debtor's assets have been liquidated and all claims (save the Bank's) have been allowed or disallowed. The trustee has compromised and settled the primary dispute in the case with court approval. The only possible matter remaining to be "administered" is this: does the Bank have a sustainable administrative allowance against this estate and, if so, what is it?

Parties in interest who provide goods or perform services that constitute "the actual, necessary costs and expenses of preserving the estate" may seek administrative expenses that are afforded priority by § 507(a)(2).[24] Section 503(b)(1) contains a non-exclusive laundry list of preservation costs that includes wages, taxes incurred during administration, § 330(a) trustee and professionals' compensation, certain creditors' expenses, and other classes of obligations not

---

[23] 9 COLLIER ON BANKRUPTCY, ¶ 5009.02 (Richard Levin and Henry J. Sommer eds., 16th ed. 2019) [hereafter "COLLIER"].
[24] *See* § 503(b)(1).

6

relevant here.[25] The trustee argues that the Bank has done nothing to preserve the estate, relying on well-articulated authority that a claim is only entitled to administrative priority if it (1) arose from a transaction with the estate; and (2) directly and substantially benefitted the estate.[26] A claim that arises postpetition, but does not benefit the estate, is not an administrative allowance. The Bank did no business with the estate and rendered it no benefit.

Instead, the Bank says that under its prepetition loan agreement with LPAI, the borrower was obligated to indemnify it against any liability arising out of the credit relationship. Because Gordian and LPAI are prosecuting the assigned causes of action, the Bank has incurred defense costs that arose during case administration for which it may claim indemnification. Paragraph 11.15 of the Bank's Loan and Security Agreement indemnifies the Bank against any costs or liabilities--

> . . . in connection with any litigation . . .with respect or in any way related, [sic] to the existence, execution, delivery, enforcement . . . of the [loan transaction documents], *except* such liabilities . . . that arise out of or result from the [Bank's] gross negligence or willful misconduct.[27]

The paragraph also states that these provisions survive repayment of the obligation.

There are three problems with the Bank's reliance on this provision. First, the Bank assigned this agreement prepetition, along with all of its other rights against LPAI to Embracing, receiving the equivalent of what it was owed by LPAI

---

[25] The Bank doesn't assert that it is compensable under § 330.
[26] 4 COLLIER, ¶ 503.06[3].
[27] Doc. 510-1, p. 38. Emphasis added.

7

in exchange. Embracing, in turn, assigned the obligations and rights to Gordian. The Bank no longer owns these debts or the other benefits of the contracts it assigned. Both Kansas and Missouri law provide that when an injured party assigns its rights to a third party, only that third party may assert them.[28] The Bank is not the real party in interest to assert an indemnification claim.

The second problem is that this contractual right arose prepetition. The loan agreement dates back to July 31, 2008, nearly seven years before this case was filed. To qualify as administrative expenses, claims must arise postpetition. Even if the Bank retained its contractual indemnity claim against the estate, that claim would be denied priority because it arises from a prepetition transaction. Collier notes that, in general, attorneys' fees that arise out of a prepetition transaction do not enjoy administrative priority.[29] Attorney fees awarded to an entity during the case do not merit administrative priority if they result from a prepetition transaction with the debtor as opposed to the estate.[30]

The third problem is that in the Missouri case, Gordian asserts that the Bank acted wrongfully in its administration of the securities proceeds. Litigation arising out of reckless or wrongful conduct by the Bank is expressly excluded from the

---

[28] *Marvin v. State Farm Mutual Auto. Ins. Co.,* 894 S.W. 2d 712, 713 (Mo. App. 1995); *Army Nat'l Bank v. Equity Developers, Inc.,* 245 Kan. 3, 22, 774 P.2d 919 (1989). The loan documents provide that they will be governed by Missouri law.
[29] 4 COLLIER, ¶ 503.06[2]. *See In re Jartran, Inc.*, 732 F.2d 584, 588 (7th Cir. 1984) (debtor agreed prepetition to pay for advertising that appeared postpetition; claim for postpetition services under agreement not entitled to priority).
[30] 4 COLLIER, ¶ 503.06[3][a]. *See also In re Jack/Wade Drilling, Inc.*, 258 F.3d 385 (5th Cir. 2001).

8

indemnification's scope. Even if the Bank still owned the right of indemnification, it does not extend to fees arising from defending the Bank's willful misconduct.

Only when the trustee raised these points in his response did the Bank fall back on the "*Reading* doctrine."[31] In its reply (in a nutshell), the Bank claims that it has been damaged by the trustee's conduct in assigning these alleged causes of action to Gordian who has now chosen to prosecute them.[32] The *Reading* doctrine creates an operational exception to the requirement that administrative claims come from actual and necessary costs that benefit the estate.[33]

In *Reading Co. v. Brown*, a chapter XI case under the 1898 Bankruptcy Act, the United States Supreme Court allowed a party with a negligence claim against a receiver cum chapter XI trustee to pursue an administrative claim for its damages, deeming them to be among the "actual and necessary costs" of administration. The district court appointed a receiver who operated an industrial building that burned down in January of 1963, damaging property of the nearby Reading Company. That May, the building's owner filed a voluntary bankruptcy petition and the receiver was elected the chapter XI trustee. Reading sought an administrative allowance under § 64a of the Act, the precursor to § 503. Holding that "those injured by the operation of the business during an arrangement should share equally with, or recover ahead of, those for whose benefit the business is carried on," the Supreme

---

[31] *See Reading Co. v. Brown,* 391 U.S. 471 (1968).
[32] Doc. 513.
[33] *See In re Brooke Corp.,* 485 B.R. 650, 658-59 (Bankr. D. Kan. 2013) (viewing *Reading* as an exception to the benefit rule for purposes of § 503(b)(1) where tort claims arise from postpetition conduct undertaken in the operation of the business).

9

Court concluded that tort claims arising during administration are "actual and necessary expenses of the arrangement [administration]."[34] The Court reasoned that "actual and necessary costs" should "include costs *ordinarily incident to operation of a business*, and not be limited to costs without which rehabilitation would be impossible."[35]

Courts have found that this exception survived the bankruptcy code's enactment, but with limitations. Those courts particularly focus on the idea that *Reading* claims only include costs that are "incident to operation of a business."[36] While *Reading* grants relief to victims of postpetition torts committed by the debtor in possession or trustee, the claims must arise out of postpetition business operations. The doctrine doesn't apply in chapter 7 cases if the harm is caused by the trustee's liquidation efforts.[37] At least three circuit courts of appeal have drawn the operating-liquidating distinction, denying *Reading* treatment to victims of liquidating trustee mishaps.[38]

This case's facts differ from *Reading*'s. When LPAI's chapter 7 trustee assigned the causes of action to Gordian in 2019, operations had long since ceased. Indeed, the trustee had liquidated the tangible assets of LPAI and the sale proceeds

---

[34] 391 U.S. 471, 482.
[35] 391 U.S. at 483. Emphasis added.
[36] *In re Hemingway Transp. Inc.*, 954 F.2d 1, 6-7 (1st Cir. 1992) (attorney fees derived from a prepetition indemnity agreement and incurred in resisting trustee's efforts to liquidate a CERCLA claim not entitled to administrative expense priority).
[37] 4 COLLIER, ¶ 503.06[3][c][ii].
[38] *See In re Resource Tech. Corp.*, 662 F.3d 472, 477 (7th Cir. 2011); *In re Abercrombie*, 139 F.3d 755, 758 (9th Cir. 1998) and *Hemingway, supra*.

10

were being held in the Court's registry, pending a determination in the adversary whether Gordian's claim should be subordinated.[39] Unlike the debtor in *Reading*, LPAI wasn't being "arranged" or reorganized. The trustee's litigation was plainly part of the liquidation process and not "operational." In addition, to the extent the Bank relies on its contractual agreement for indemnity relief against the estate, alleged injuries arising out of prepetition transactions are also excepted from the *Reading* doctrine.[40] The *Reading* doctrine simply doesn't apply here.

The Bank also argues that it had no notice of the trustee's motion to approve the compromise and settlement agreement that assigned the LPAI claims to Gordian. The Notice of Intended Compromise was filed on January 25, 2019.[41] The list of addressees to whom the notice was mailed includes the Bank by its correct name and at its correct address.[42] But the body of the notice mistakenly refers to "*Central* Bank & Trust (CBT) [sic]." The notice is very clear that the trustee will assign "any and all of the debtor's and estate's legal and equitable claims (including potential claims against CBT)" as part of the consideration for the agreement.[43] Attached to the notice is the settlement agreement itself which states—

> As part of the Settlement Agreement approved as described in Section 1, Trustee shall assign any and all of debtor's and estate's legal and

---

[39] Those funds have been on deposit with the court registry since March of 2017. *See* Doc. 429, Order granting motion to deposit funds into court registry and docket report showing receipt of $688,888 on March 15, 2017.
[40] *Abercrombie, supra.*
[41] Doc. 468.
[42] Doc. 469, p. 3.
[43] Doc. 468, ¶s 2, 5.

11

equitable claims and/or potential claims against *Citizens Bank and Trust Company ("CBT")* to Gordian.[44]

Both the notice and attachment were mailed to the Bank and it did not object. While this notice isn't perfect, anyone reading the notice and attachment (seven pages, double-spaced) would have known that the causes of action were to be assigned and that the Bank was their target. Plus, it is hard to see what objection to the settlement the Bank could have mounted. Chapter 7 trustees frequently sell or assign causes of action held by estates as part of the liquidation process and should be able to do so free of second-guessing by the actions' purported targets.

Conclusion

There is no reason to further delay distribution and closing of this case while awaiting the outcome of the Missouri case. The Bank's purported contractual administrative claim has been assigned to Gordian with the rest of the LPAI debt. It arises out of a prepetition transaction, the lending agreement, and it did not confer a substantial or direct benefit to the estate. The *Reading* doctrine does not "save" the Bank's claim because it did not arise as a result of tortious activity by the trustee while operating the debtor or the estate. At best, the Bank would have a general unsecured claim and, as noted above, unsecured creditors are sadly out of the money in this case. The LPAI estate has been fully administered. The Bank's objection to the trustee's final report is OVERRULED and that report is APPROVED.

###

---

[44] Doc. 468-1, ¶ 3. Emphasis added.